IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

HEALIX INFUSION THERAPY, INC.,     §
                                   §
            Plaintiff,             §
                                   §
v.                                 §     CIVIL ACTION NO. H-08-0337
                                   §
HELIX HEALTH, LLC and STEVEN       §
MURPHY,                            §
                                   §
            Defendants.            §

## MEMORANDUM OPINION AND ORDER

Pending before the court are defendants' Motion to Dismiss for Lack of Jurisdiction (Docket Entry No. 12); Plaintiff's Response to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (Docket Entry No. 16) wherein plaintiff Healix Infusion Therapy, Inc. ("HIT") moved for jurisdictional discovery; and Plaintiff's Motion to Strike and Request for Judicial Notice (Docket Entry No. 30). For the reasons stated below, defendants' motion will be granted in part and denied in part, while plaintiff's discovery motion and motion to strike will be denied.

## I.  Factual and Procedural Background

Helix Health, LLC is a Delaware corporation that maintains its principal place of business in New York. Helix Health has no offices or agents in Texas. It does not own or lease any property in Texas. It does not advertise or sell its services in Texas.[1]

---

[1]Affidavit of Defendant Steven Murphy in Support of the Defendants' Motion to Dismiss, Docket Entry No. 14, ¶¶ 6-7.

Helix Health has registered and operates its own Web site located on the World Wide Web ("Web") at www.helixhealth.org. According to its Web site, Helix Health is a provider of "personalized medicine," a medical practice that tailors one's medical care to one's genetic and environmental background.[2]  The site permits users to download a "Patient Referral Form" that a physician may use to refer a patient to Helix Health.  That form cannot be submitted online, however.[3]  Users of this Web site cannot purchase any products or services from Helix Health, obtain medical advice, or make appointments for services.[4]  Users may, however, obtain general information about the company and its employees,[5] and studies in the field of personalized medicine.[6] Users may also inquire further about the company by filling out an online contact form.[7]  The site also allows Helix Health patients

_____

[2]About Helix Health, http://www.helixhealth.org/About_Helix_ Health.htm (last visited April 21, 2008).

[3]See Helix Health, http://www.helixhealth.org/referral options.htm (last visited April 21, 2008) (allowing referral only by phone or fax).

[4]Murphy Aff., Docket Entry No. 14, ¶ 16.

[5]About the Helix Health Team, http://www.helixhealth.org/ AboutTheHelixHealthTeam.htm (last visited April 21, 2008).

[6]Studies Affecting Your Care: Study Outlines Approach to Genetic Diagnosis in Autism, http://www.helixhealth.org/Studies AffectingYourCare.htm (last visited April 21, 2008).

[7]Contact Helix Health, http://www.helixhealth.org/contact.htm (last visited April 21, 2008).

to access a "medical record patient portal" by using a member ID and password.[8]

Steven Murphy is a Connecticut resident. Murphy is a licensed physician but is not licensed to practice medicine in Texas and has never practiced medicine in Texas. He neither owns nor leases property in Texas. He transacts no business in Texas. Although Murphy has traveled to Texas in the past, those visits had no business purpose and had nothing to do with the present dispute between him and HIT.[9]

Besides working as a physician, Murphy maintains a Web log, or "blog," the Gene Sherpa, located on the Web at thegenesherpa. blogspot.com. The stated purpose of Murphy's blogs is to provide interested persons with a guide to the science, pitfalls, and developments of personalized medicine.[10] On his blog Murphy posts articles by authors from a variety of geographic locations, including Texas, on the topic of personalized medicine and often includes his own thoughts about the article's content.[11] In some of his posts Murphy mentions or includes a hyperlink to Helix

---

[8]Helix Health Members, http://www.helixhealth.org/members.htm (last visited April 21, 2008).

[9]Murphy Aff., Docket Entry No. 14, ¶¶ 3-5.

[10]Plaintiff's Response to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Docket Entry No. 16, Exhibit I.

[11]See, e.g., Plaintiff's Response to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Docket Entry No. 16, Exhibits I, M, & N.

Health and its Web site, and has placed on his blog the Helix Health logo.[12] Users of Murphy's blog may submit comments about Murphy's posts to Murphy who then may choose to post them. Although he has received many such comments, Murphy has never knowingly received or posted a comment from a user in Texas.[13] Murphy has also listed his blog with BlogCatalog.com, a site that allows its users to find other blogs and communicate with the individuals who maintain them; BlogCatalog.com is based in San Antonio, Texas.[14]

Murphy's blog has been visited by many Texas residents, a fact Murphy has acknowledged on his blog. Murphy's blog has also been visited by thousands of users from all, or nearly all, of the fifty states and users from all, or nearly all, European countries. Many users who reside in countries throughout Asia, Africa, and the Middle East have also visited Murphy's blog.[15]

In the past Murphy has placed merchandise bearing the Gene Sherpa or Helix Health logo for sale on a separate, independent Web

---

[12]Plaintiff's Response to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Docket Entry No. 16, Exhibits H & I.

[13]Defendants' Reply Memorandum in Support of Their Motion to Dismiss for Lack of Jurisdiction, Docket Entry No. 29, Affidavit of Defendant Steven Murphy M.D. in Further Support of the Defendants' Motion to Dismiss, ¶ 9.

[14]Plaintiff's Supplemental Response to Defendants' Motion to Dismiss the Case for Lack of Personal Jurisdiction, Docket Entry No. 24, Exhibits B & C.

[15]Plaintiff's Response to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Docket Entry No. 16, Exhibit N.

site, www.cafepress. com ("Café Press"), and placed a link to that site on his blog.[16]   Through Café Press, Scott Weiss, a Texas resident and HIT's counsel of record, was able to purchase an item bearing the Helix Health logo.   However, no other Texas residents besides HIT's counsel of record have purchased Helix Health merchandise.[17]

HIT is a Texas corporation and holds a federally registered trademark for the Healix mark.   HIT's dispute with the defendants arose after Murphy, on Helix Health's behalf, filed an application with the United States Patent and Trademark Office ("Trademark Office") to register "Helix Health" as a trademark.   Upon receiving notice of this application, HIT filed a notice of opposition with the Trademark Office on August 30, 2007, arguing that HIT's mark and the Helix Health mark were confusingly similar.   Months later, Murphy contacted HIT to discuss the notice of opposition that HIT had filed.[18]

Unable to come to an agreement with the defendants, HIT filed suit initially against Helix Health only, alleging causes of action for trademark infringement, trademark dilution under the Texas Anti-Dilution Statute, and false designation.[19]   Later, HIT amended

---

[16]<u>Id.</u>, Exhibits L & Q.

[17]Defendants' Memorandum in Support of Their Motion to Dismiss for Lack of Jurisdiction, Docket Entry No. 15, Exhibit A.

[18]Plaintiff's First Amended Complaint, Docket Entry No. 7, ¶¶ 6, 25-34.

[19]Original Complaint, Docket Entry No. 1.

its complaint to add Murphy as a defendant and asserted causes of action against him for fraud, trademark dilution under the Texas Anti-Dilution Statute, and violation of the Anti-Cybersquatting and Consumer Protection Act ("ACPA").[20]   Thereafter, defendants filed their joint motion to dismiss for lack of personal jurisdiction.

## II.   **Standard of Review**

The Federal Rules of Civil Procedure permit this court to exercise personal jurisdiction over nonresidents, such as defendants, to the extent permitted by Texas law.  See Fed. R. Civ. P. 4(e)(1), 4(h)(1), 4(k)(1).  It is HIT's burden to present prima facie evidence supporting jurisdiction.  Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 270 (5th Cir. 2006).  All nonconclusional factual allegations in the complaint will be credited "to the extent those are not controverted by any of the evidence[.]" Felch v. Transportes Lar-Mex SA De CV, 92 F.3d 320, 326 n.16 (5th Cir. 1996).  However, "the prima-facie-case requirement does not require the court to credit conclusory allegations, even if uncontroverted."  Panda Brandywine Corp. v. Potomac Elec. Power Co., 253 F.3d 865, 869 (5th Cir. 2001); Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998) ("[T]he law does not require [courts] struthiously to credit conclusory [jurisdictional] allegations or draw farfetched inferences."  (citation and internal quotation marks omitted)).

---

[20]Plaintiff's First Amended Complaint, Docket Entry No. 7.

-6-

### III.  <u>Analysis</u>

Determining whether a forum has personal jurisdiction over a defendant generally requires a two-step inquiry:  (1) whether the state's long-arm statute confers personal jurisdiction and (2) whether the exercise of jurisdiction under the long-arm statute would violate a defendant's right to due process.  <u>Id.</u>  However, because the Texas long-arm statute confers jurisdiction to the full extent of due process, the only relevant inquiry in this case is whether exercising personal jurisdiction over the defendants would violate due process.  See <u>Fielding v. Hubert Burda Media, Inc.</u>, 415 F.3d 419, 424-25 (5th Cir. 2005).

There are two types of personal jurisdiction:  general and specific.  <u>Seiferth</u>, 472 F.3d at 271.  General jurisdiction is based on contacts that are unrelated to the specific controversy and exists when a defendant maintains "'continuous and systematic'" contacts with the forum.  <u>Id.</u>  Specific jurisdiction exists when a defendant's contacts with the forum state arise out of or are related to the controversy.  <u>Id.</u>  Because HIT has raised both theories, each will be addressed in turn.

### IV.  <u>General Jurisdiction</u>

HIT's argument that the court may exercise general jurisdiction over defendants can be disposed of rapidly.  To establish that general jurisdiction exists over a defendant, a plaintiff must establish that the "nonresident defendant's contacts

-7-

with the forum state are substantial, continuous, and systematic." Johnston v. Multidata Sys. Int'l Corp., --- F.3d ---, 2008 WL 921479, *5 (5th Cir. April 7, 2008).  This is a difficult test to meet because it requires evidence of extensive contacts between the defendant and the forum state.  Id.

HIT has not submitted enough proof to make this difficult showing.  The Supreme Court in Helicopteros Nacionales de Colombia, S.A. v. Hall, 104 S. Ct. 1868 (1984), held that Texas courts lacked general jurisdiction over a defendant even though the defendant had purchased several helicopters and more than $4 million in helicopter parts from a Texas company, repeatedly sent company personnel to Texas for training and consultation, and sent its agents to Texas to negotiate contracts.  Id. at 1870, 1873-74. HIT has failed to prove that either Murphy or Helix Health possess even a fraction of the contacts that the Supreme Court found inadequate to bestow general jurisdiction in Helicopteros.  There is thus no basis for HIT's argument that defendants' respective contacts are sufficiently "substantial, continuous, and systematic" to subject them to this court's general jurisdiction.

## V.  Specific Jurisdiction

Before the court can exercise specific jurisdiction over the defendants, HIT must make prima facie showings that (1) the defendants have minimum contacts with Texas and (2) its causes of action arise out of or result from the defendants' respective

-8-

contacts.  Seiferth, 472 F.3d at 271 (quoting Nuovo Pignone, SpA v. STORMAN ASIA M/V, 310 F.3d 374, 378 (5th Cir. 2002)).  A defendant has minimum contacts with the forum state if "[t]he nature and quality of a defendant's contacts with the forum . . . justify the conclusion that defendant should have reasonably anticipated being haled into court in the forum state."  Coats v. Penrod Drilling Corp., 5 F.3d 877, 884 (5th Cir. 1993).  The plaintiff must point to some act demonstrating that the defendant "purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there."  Nuovo Pignone, SpA, 310 F.3d at 378.  A single act by a defendant that is directed toward the forum state, and that gives rise to a plaintiff's causes of action, can alone support a finding of minimum contacts.  Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 211 (5th Cir. 1999).  However, contacts that are merely "'random,' 'fortuitous,' or 'attenuated'" are not sufficient to support a finding of minimum contacts.  Burger King Corp. v. Rudzewicz, 105 S. Ct. 2174, 2183 (1986) (citations omitted).  If HIT satisfies its two-pronged prima facie burden, "the burden shifts to the [defendants] to defeat jurisdiction by showing that its exercise would be unfair or unreasonable."  Seiferth, 472 F.3d at 271.

    As an initial matter, the court must reject HIT's (tacit) argument that if the court concludes that it has jurisdiction over one defendant for one claim, the court may exercise jurisdiction

over both defendants for all claims.[21]   A plaintiff seeking to
subject multiple nonresident defendants to the jurisdiction of the
forum state for multiple causes of action must satisfy the two-
pronged burden as to each defendant, see Calder v. Jones, 104
S. Ct. 1482, 1487 (1984) (citing Rush v. Savchuk, 100 S. Ct. 571,
579 (1980)); and as to each cause of action "that arise[s] out of
different forum contacts," Seiferth, 472 F.3d at 274.  Although
there are exceptions to this general rule,[22] HIT has failed to
establish or even to allege that those exceptions apply to this
case.  Accordingly, HIT must meet its prima facie burden as to both
Murphy and Helix Health.

---

[21]See, e.g., Plaintiff's Response to Defendants' Motion to
Dismiss for Lack of Personal Jurisdiction, Docket Entry No. 16,
pp. 6-10.

[22]A corporate agent's contacts with a forum state may subject
a corporate defendant to a forum's jurisdiction.  See Stripling v.
Jordan Prod. Co., LLC, 234 F.3d 863, 870-72 (5th Cir. 2000)
(holding principal was subject to forum's jurisdiction based on
actions of its agent); see also id. at 870 (indicating that it is
plaintiff's burden to allege and establish the existence of an
agency relationship by prima facie evidence); Romak USA, Inc. v.
Rich, 384 F.3d 979, 985 (8th Cir. 2004) ("Although a court may
exercise personal jurisdiction over a defendant through the acts of
his agent, '[a] party who relies upon the authority of an agent has
the burden of proof regarding both the fact of the agency
relationship and the scope of the agent's authority.'" (citations
omitted)).  Moreover, in cases where a corporate defendant is the
alter ego of another corporation or an individual "the jurisdic-
tional contacts of one are the jurisdictional contacts of the other
for purposes of . . . due process analysis." Patin v. Thoroughbred
Power Boats, Inc., 294 F.3d 640, 653 (5th Cir. 2002).  It is the
plaintiff's burden to establish that a corporate entity is the
alter ego of another corporate entity or individual.  See id.

**A.   Claims Against Murphy**

HIT alleged three causes of action against Murphy:  fraud, trademark dilution under the Texas Anti-Dilution Statute, and violation of the ACPA.  Because these three causes of action depend on different forum contacts, HIT must demonstrate that Murphy has sufficient forum contacts as to each cause of action.

1.   <u>HIT's Fraud Claim Against Murphy</u>

The forum contacts alleged in connection with HIT's cause of action for fraud against Murphy involve a few phone calls and an e-mail between Murphy and HIT's counsel of record.[23]  A single communication into or directed at a forum may justify subjecting a defendant to the forum's jurisdiction when the actual content of the communication gives rise to a cause of action for fraud.  <u>See</u> <u>Wien Air Alaska, Inc.</u>, 195 F.3d at 213.  However, in this case the court is not persuaded that the communications that Murphy directed toward this forum give rise to a fraud claim.

HIT alleges in its complaint that Murphy made the following false statements in his communications with HIT's counsel:  that he had not received notice of the Trademark Office's default judgment against Helix Health's registration of the Helix Health mark -- even though he had already received the notice via e-mail; and that he was operating only a medical practice -- even though he was also

_____

[23]Plaintiff's First Amended Complaint, Docket Entry No. 7, pp. 12-13.

-11-

selling merchandise bearing the Helix Health logo on the Internet.
HIT also alleged that Murphy "manufactured" settlement discussions
with HIT to create a basis for setting aside the default judgment.[24]
The court fails to understand, and HIT has failed to explain, how
these statements, even if assumed false, would give rise to a fraud
claim.

> To prove fraud under Texas law, HIT is required to prove
>
> (1) that a material representation was made; (2) the
> representation was false; (3) when the representation was
> made, the speaker knew it was false or made it recklessly
> without any knowledge of the truth and as a positive
> assertion; (4) the speaker made the representation with
> the intent that the other party should act upon it;
> (5) the party acted in reliance on the representation;
> and (6) the party thereby suffered injury.

In re FirstMerit Bank, N.A., 52 S.W.3d 749, 758 (Tex. 2001). There
is no indication, or even allegation, that Murphy made these
allegedly false statements with the intent to induce HIT to act
upon them; or that HIT ever acted in reliance on those statements.
Cf. Wien Air Alaska, Inc., 195 F.3d at 209-11 (defendant's
allegedly false representations induced plaintiff to enter
contracts and make payments to defendant). Moreover, it is unclear
what action Murphy's allegedly false statements could have induced

---

[24]First Amended Complaint, Docket Entry No. 7, ¶¶ 67-70.  In
support of its fraud claim, HIT also alleged that Murphy made false
statements in "his" trademark application for the Helix Health mark
and in his trademark application for Gene Sherpa.  Plaintiff's
First Amended Complaint, Docket Entry No. 7, pp. 12-13.  However,
HIT has not shown that at the time these contacts were made they
occurred within or were directed toward Texas.

HIT to take.   Accordingly, the court concludes that Murphy's communications with HIT in Texas are not sufficient to justify subjecting Murphy to suit in Texas for fraud.

2.   <u>HIT's Claim for Dilution Against Murphy</u>

HIT asserts a claim for injunctive relief against Murphy under Texas's Anti-Dilution Statute, <u>see</u> Tex. Bus. & Com. Code § 16.29. HIT argues that the court may subject Murphy to its jurisdiction for this claim based on Murphy's Internet contacts with this forum. In <u>Mink v. AAAA Dev. LLC</u>, 190 F.3d 333 (5th Cir. 1999), the Fifth Circuit established a "sliding scale" to evaluate whether a nonresident defendant's Internet contacts are sufficient to subject it to the jurisdiction of the forum state.   <u>Id.</u> at 336 (citing <u>Zippo Mfg. Co. v. Zippo Dot Com, Inc.</u>, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)).   At one end of the scale are Web sites that "merely allow[] the owner to post information on the internet"; these "passive" Web sites will not support a finding of minimum contacts.   <u>Revell v. Lidov</u>, 317 F.3d 467, 470 (5th Cir. 2002).   At the other end of the scale are Web sites through which "a defendant do[es] business over the Internet or [engages in] sufficient interactivity with residents of the forum state[.]" <u>Mink</u>, 190 F.3d at 337.   Defendants that own or maintain such Web sites will be subject to the forum state's jurisdiction.   <u>Id.</u>   In the middle of the spectrum are instances where a defendant has allowed users "to exchange information with a host computer." <u>Id.</u> at 336.   Whether

-13-

the contacts generated by sites in this middle ground are
sufficient to support a finding of minimum contacts depends upon
"the extent of the [site's] interactivity and nature of the forum
contacts."  Revell, 317 F.3d at 470.

Murphy's blog is more than passive.  In Revell, a case that
neither party cited, the Fifth Circuit concluded that a
university's Internet bulletin board was at least interactive, and
not simply passive, because it permitted users to post their own
opinions and work and to review and comment on the opinions and
work of other users.  See id. at 472.  This is essentially how
Murphy's blog functions:  Murphy posts information and his opinions
about issues in the field of personalized medicine and allows other
users to submit their comments on his posts.[25]  That Murphy must
first moderate a user's comment before the comment may be posted
makes Murphy's blog more, not less, interactive.  Thus, to
determine whether Murphy is subject to the court's specific
jurisdiction, the court "must evaluate the extent of this
interactivity as well as [HIT's] arguments with respect to Calder,"
and the "effects" test.[26]  Id.

In Calder the Supreme Court held that a California court could
assert specific jurisdiction over two Florida defendants based

_____

[25]See, e.g., Plaintiff's Response to Defendants' Motion to
Dismiss for Lack of Personal Jurisdiction, Docket Entry No. 16,
Exhibit I.

[26]See Plaintiff's Response to Defendants' Motion to Dismiss for
Lack of Personal Jurisdiction, Docket Entry No. 16, pp. 12-13.

-14-

solely on their publication of a single defamatory article published in a nationally circulated tabloid.  104 S. Ct. at 1487. The Calder defendants knew that the plaintiff lived in California and that the "brunt of the harm" would be felt there; they used California sources to write the article about the plaintiff's California activities; and "expressly aimed" the defamatory article at California by intentionally circulating it there.  Id. at 1486-87.  Given these contacts with the forum, the Court concluded that the defendants had purposely directed their activities toward California and should therefore have "'reasonably anticipated being haled into court there' to answer for the truth of the statements made in their article."  Id. at 1487 (citations omitted).

Although the claim at issue in Calder was the tort of defamation, the Calder "effects" test is applicable to other forms of tortious conduct.  See Wien Air Alaska, Inc., 195 F.3d at 212. A cause of action for trademark dilution is based on conduct that is tortious in nature.  See Times Mirror Magazines v. Las Vegas Sports News, 212 F.3d 157, 163 (3d Cir. 2000) (noting that trademark dilution is an "independent commercial tort"). Accordingly, a defendant that "expressly aims" its trademark-diluting conduct at residents of a forum state can be said to have purposely directed its activities toward that forum, and should therefore reasonably anticipate being haled into court in that forum.  Cf. Dakota Industries, Inc. v. Dakota Sportswear, Inc., 946

F.2d 1384, 1390-91 (8th Cir. 1991) (applying <u>Calder</u> to claim of trademark infringement).

HIT argues that the following facts establish that Murphy expressly aimed his conduct at Texas residents through his blog: (1) in some of his posts Murphy has cited the work of Texas residents; (2) Murphy's blog contains a link to another Web site, ClustrMaps, that shows that many users from Texas have viewed Murphy's blog; (3) in his blog posts Murphy has acknowledged that a large number of his users reside in Texas, specifically Houston; (4) Murphy's site is "highly interactive" and permits users to interact with Murphy and each other by allowing users to append comments to Murphy's blog posts, participate in surveys, and join organizations;[27] (5) Murphy listed his blog on another Web site,

_____

[27]Plaintiff's Response to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Docket Entry No. 16, pp. 6-10.  HIT also asserted that Murphy allowed Texas residents to post two advertisements on his blog.  See Plaintiff's Response to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Docket Entry No. 16, p. 9; <u>id.</u>, Exhibit M.  However, the evidence HIT submitted fails on its face to support this assertion.  One of the advertisements that a Texas resident is purported to have posted on Murphy's blog involved a symposium hosted by the New York Academy of Sciences apparently involving a doctor from the University of Houston Law Center.  No showing has been made that this doctor is actually a Texas resident, but even assuming that she is, an advertisement that mentions a Texas resident is not, without more, evidence that a Texas resident placed the advertisement on Murphy's blog.  And HIT has submitted no evidence that this "advertisement" was placed by the Texas doctor mentioned.  The other "advertise-ment" is nothing more than Murphy's commentary on a post that another Texas doctor made on a different blog that Murphy found while "search[ing] for useful news."  Plaintiff's Response to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction,
(continued...)

BlogCatalog.com, which is located in Texas;[28] and (6) Murphy placed a link on his blog to another Web site, Café Press, that offered many products bearing the Helix Health logo for sale, which one Texas resident purchased.[29]  The court is not persuaded that these facts taken together warrant a finding that Murphy "expressly aimed" his activities on his blog at the residents of this forum.

In reaching this conclusion, the court finds two decisions from the Fifth Circuit instructive.  In <u>Fielding</u>, 415 F.3d 419, the Fifth Circuit held that Texas courts lacked specific jurisdiction over several German media companies.  <u>Id.</u> at 426-28.  The companies had published unflattering and allegedly untrue news stories about the plaintiffs in publications that were circulated mainly in Germany but also in Texas.  <u>Id.</u> at 426.  The authors of the stories wrote about the Texas activities of one of the plaintiffs, interviewed that plaintiff's ex-husband in Texas, and obtained other sources from Texas that were all used in the published articles.  <u>Id.</u>  Applying <u>Calder</u> the court held that the defendants' contacts with Texas were not sufficient to subject them to the

---

[27](...continued)
Docket Entry No. 16, Exhibit M.   Thus, HIT's allegation is conclusory and will not be credited by the court.  <u>See</u> <u>Panda Brandywine Corp.</u>, 253 F.3d at 869.

[28]Plaintiff's Supplemental Response to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Docket Entry No. 24, pp. 1-2.

[29]Plaintiff's Response to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Docket Entry No. 16, pp. 10-11.

jurisdiction of Texas courts because the stories' "references to Texas were merely collateral to the focus of the articles," which was on the plaintiffs' activities in Germany.  Id. at 426-27.

In Revell the court held that a Texas court could not exercise specific jurisdiction over a nonresident author based on allegedly defamatory statements the author published on a university's Internet bulletin board.  317 F.3d at 475-76.  The author's allegedly defamatory statements concerned a Texas resident who alleged that the author's statements had injured his reputation in Texas.  Id. at 473.  Applying Calder the Fifth Circuit held that a Texas district court lacked jurisdiction over the defendant because the author's statements were "not directed specifically at Texas"; rather, "the [author's] post to the bulletin board . . . was presumably directed at the entire world[.]"  Id. at 475.

Although the claims that HIT raises here are different from the plaintiffs' claims in Fielding and Revell, the reasoning of these cases applies.  Murphy provided content on his blog regarding issues that attracted many users, and provided a forum where those users, including users from Texas, could interact concerning those issues.  However, the evidence does not indicate that Murphy specifically directed is blog toward Texas users; rather, the evidence shows that, like the defendant in Revell, Murphy geared his message toward an entire world of users, a fact supported by

-18-

the vast geographic diversity of Murphy's users.[30]  And while Murphy sometimes used Texas sources to convey his message, as with the defendants in Fielding, Murphy's use of Texas sources was "merely collateral" to the focus of his posts:  to inform all users about particular issues in the field of personalized medicine wherever they may arise.[31]  Thus, although Murphy knows that many residents of Texas use his blog, that fact alone does not mean that Murphy used his blog with the "'intent to target and focus on [Texas] [us]ers.'"  Revell, 317 F.3d at 471 (quoting Young v. New Haven Advocate, 315 F.3d 256, 263 (4th Cir. 2002)).

Nor does the evidence concerning BlogCatalog.com indicate that Murphy intended to specifically direct his activities toward or focus on Texas residents.  This evidence merely indicates that by listing his blog on the BlogCatalog.com site, Murphy joined a blog network that allows its members, presumably from anywhere in the world, to find and communicate with other BlogCatalog.com members.[32]

Likewise, the fact that Murphy had placed allegedly infringing merchandise for sale on another site (Café Press) and placed a link to that site on his blog does not evidence an effort by Murphy to

---

[30]See Plaintiff's Response to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Docket Entry No. 16, Exhibit N.

[31]See Plaintiff's Response to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Docket Entry No. 16, Exhibits M & N.

[32]See Plaintiff's Supplemental Response to Defendants' Motion to Dismiss the Case for Lack of Personal Jurisdiction, Docket Entry No. 24, Exhibit B.

direct his activities toward or focus on Texas users.  It may be, as HIT argues, that by both providing content on his blog that attracts Texas users and placing the allegedly infringing items for sale on the Café Press site without limitations on where those products could be sold Murphy made it foreseeable that HIT would suffer injury in Texas.[33]  However, under Calder, "[f]oreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum."  Wien Air Alaska, Inc., 195 F.3d at 212.

HIT has not shown that Murphy directed the sale of the allegedly infringing items, or any other act, specifically or intentionally toward Texas or its residents.  The court rejects HIT's argument that the purchase by one forum resident -- HIT's counsel of record -- of an allegedly infringing item is evidence of a specific act that Murphy directed toward this forum.  Although counsel's purchase of the allegedly infringing item does not disqualify the contact as proof of Murphy's contact with this forum, cf. LG Elec., Inc. v. Quanta Computer Inc., 520 F. Supp.2d 1061, 1068 (W.D. Wis. 2007) (using counsel's purchase of an allegedly infringing good as the basis for an inference that other consumers within the forum purchased an allegedly infringing good), counsel's purchase of the infringing item is not sufficient to warrant subjecting Murphy to suit in this jurisdiction.

_____

[33]Plaintiff's Response to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Docket Entry No. 16, pp. 10-13.

Counsel's one-time purchase of the allegedly infringing item is precisely "the kind of 'fortuitous,' 'random,' and 'attenuated' contact[] that the Supreme Court has held insufficient to warrant the exercise of jurisdiction." Toys "R" US, Inc. v. Step Two, S.A., 318 F.3d 446, 454-55 (3d Cir. 2003) (citing Burger King Corp., 105 S. Ct. at 2183).   HIT's counsel is the only Texas resident who has purchased an allegedly infringing item.[34]   He did so only after he received notice from the Trademark Office that Helix Health had filed an application to register its mark; he became involved in a trademark dispute with Helix Health; and he was aware that he would eventually be filing suit against Helix Health and Murphy in this forum.   Moreover, there is no evidence that HIT's counsel decided to make his purchase based on a directed or purposeful effort by Murphy to reach out either to him or to Texas residents specifically.   These are not the marks of a defendant who has "expressly aimed" his conduct at a particular forum.

3.   HIT's Cause of Action Under the ACPA

In its amended complaint HIT asserted a cause of action against Murphy for violation of the ACPA, 15 U.S.C. § 1125(d). Under the ACPA a trademark owner has a cause of action against any person who registers an Internet domain name that "is identical or

---

[34]Defendants' Memorandum in Support of Their Motion to Dismiss for Lack of Jurisdiction, Docket Entry No. 15, Exhibit A.

confusingly similar" to the owner's mark with "a bad faith intent

to profit from that mark[.]"  15 U.S.C. § 1125(d)(i)-(ii); see also

TMI, Inc. v. Maxwell, 368 F.3d 433, 436 (5th Cir. 2004) ("ACPA

. . . bases liability on a bad faith intent to profit.").  The ACPA

lists several factors that a court may consider when determining

whether a person acted with a bad faith intent, including

> (VI) the person's offer to transfer, sell, or otherwise
> assign the domain name to the mark owner or any third
> party for financial gain without having used, or having
> an intent to use the domain name in the bona fide
> offering of any goods or services, or the person's prior
> conduct indicating a pattern of such conduct;
>
> (VII) the person's provision of material and misleading
> false contact information when applying for the
> registration of the domain name, the person's intentional
> failure to maintain accurate contact information, or the
> person's prior conduct indicating a pattern of such
> conduct;
>
> (VIII) which the person knows are identical or
> confusingly similar to marks of others that are
> distinctive at the time of registration of such domain
> names, or dilutive of famous marks of others that are
> famous at the time of registration of such domain names,
> without regard to the goods or services of the parties;
> and
>
> (IX) the extent to which the mark incorporated in the
> person's domain name registration is or is not
> distinctive and famous within the meaning of subsection
> (c)(1) of this section.

15 U.S.C. § 1125(d)(1)(B)(i).

HIT alleges that the registered domain www.helixhealth.org was

confusingly similar to HIT's registered trademark.  To support a

finding of bad faith, HIT alleges that Murphy called HIT in Texas

and offered to sell the Helix Health domain to HIT; that Murphy had

-22-

no intent to use the domain name in a bona fide offering of goods and services at the time he registered the domain; and that Murphy's prior conduct of registering multiple domains indicates a pattern of registering domain names with a bad faith intent to profit thereby.[35]  These allegations, taken as true, are sufficient to support subjecting Murphy to the court's jurisdiction for violation of the ACPA.  See Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1321-22 (9th Cir. 1998); cf. Brown, 688 F.2d at 332-33 (holding that one allegedly defamatory long-distance telephone call was sufficient to justify subjecting defendant to court's jurisdiction).

Murphy states in an affidavit attached to Defendants' Reply Memorandum (Docket Entry No. 29) that he never attempted to sell the Helix Health Internet domain name to HIT's counsel,[36] and argues that HIT's allegations that Murphy made such an offer are unsupported by any evidence.[37]  Although HIT failed to produce an affidavit or other evidence that Murphy offered to sell the domain, it had no meaningful opportunity to do so since defendants did not

---

[35]Plaintiff's First Amended Complaint, Docket Entry No. 7, ¶¶ 28-32, 73-76; see also Plaintiff's Response to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Docket Entry No. 16,  Exhibit E.

[36]Defendants' Reply Memorandum in Support of Their Motion to Dismiss for Lack of Jurisdiction, Docket Entry No. 29, Affidavit of Defendant Steven Murphy M.D. in Further Support of the Defendants' Motion to Dismiss, ¶ 13.

[37]Defendants' Reply Memorandum in Support of Their Motion to Dismiss for Lack of Jurisdiction, Docket Entry No. 29, pp. 9-10.

provide such evidence in their motion.[38]  HIT has submitted some evidence that supports other statutory bad-faith factors. Construed in the light most favorable to HIT, this evidence indicates that Murphy aimed or directed his conduct toward this forum with the bad-faith intent to profit from the use of HIT's mark.  Because these contacts gave rise to HIT's claim under the ACPA, HIT has satisfied its two-pronged <u>prima facie</u> burden with respect to this cause of action.

That HIT has satisfied its burden does not, however, end the inquiry.  The burden shifts to Murphy to establish that the court's exercise of jurisdiction over him would be unfair or unreasonable. <u>Seiferth</u>, 472 F.3d at 271.  To determine whether it would be fair or reasonable to exercise jurisdiction over Murphy the court examines the following factors:  "(1) the burden on the nonresident defendant; (2) the interests of the forum state; (3) the plain-tiff's interest in obtaining relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the several states in furthering fundamental social policies." <u>Nuovo Pignone, SpA</u>, 310 F.3d at 382.  "However, once minimum contacts are established, the interests of the forum and the plaintiff justify even large

---

[38]The court shares Murphy's concern that if HIT had or does produce such evidence, HIT's counsel of record may become a material witness in this case in violation of Texas Disciplinary Rule of Professional Conduct 3.08; HIT's counsel of record seems to be the only source of evidence for HIT's claim under the ACPA.

burdens on the defendant." <u>Wien Air Alaska, Inc.</u>, 195 F.3d at 215. Thus, to establish that the exercise of jurisdiction over him would be unfair or unreasonable, Murphy "must make a 'compelling case.'" <u>Nuovo Pignone, SpA</u>, 310 F.3d at 382 (citations omitted).

Although Murphy has stated that resolving this case in Texas would impose financial hardship, he has not explained the extent of that hardship. Because HIT is a Texas corporation, both HIT and Texas have an interest in litigating HIT's claim under the ACPA in this forum. Moreover, Murphy has not conclusively established that Texas is an inefficient forum in which to resolve this claim, or that other states share an interest in the resolution of this case. Therefore, the court concludes that Murphy has failed to make a compelling case that subjecting him to this court's jurisdiction would be unfair or unreasonable. Murphy is subject to this court's specific jurisdiction for his alleged violation of the ACPA.

**B.   Claims Against Helix Health**

In its complaint HIT alleges four causes of action against Helix Health: trademark infringement under federal law; trademark infringement under the common law; trademark dilution under Texas law; and false designation under federal law.[39] These causes of action will be examined together because they all arise out of the same forum contacts, namely Helix Health's Internet contacts. <u>See</u>

---

[39]First Amended Complaint, Docket Entry No. 7.

Seiferth, 472 F.3d at 274.  HIT argues that these Internet contacts consist of Murphy's activities on his blog, and Helix Health's own Web site (www.helixhealth.org).  The court, however, is not persuaded that the quality or nature of Helix Health's contacts with this forum justifies subjecting it to this court's jurisdiction.

The court has already rejected HIT's argument that Murphy's activities on his blog can be imputed to Helix Health for purposes of a minimum-contacts analysis.  As already noted, questions of specific jurisdiction are defendant-specific and depend on each defendant's respective contacts with a forum, see Seiferth, 472 F.3d at 272-76, unless the plaintiff establishes that the facts warrant the application of an exception.  See, e.g., Stripling, 234 F.3d at 871-72 (agency exception); Patin, 294 F.3d at 653 (alter ego exception).  Because HIT has failed to establish that such an exception applies in this case, the court regards Murphy's contacts as his own and will not impute them to Helix Health.

However, even if HIT had shown either that Murphy acted as Helix Health's agent or that Murphy was Helix Health's alter ego, the court could not exercise personal jurisdiction over Helix Health based on Murphy's blog activities.  HIT seeks to use Murphy's blog as evidence that Helix Health possess minimum contacts with this forum for the four related causes of action alleged in its complaint against Helix Health.  One of those causes

of action is a claim of dilution under Texas law.  As noted above, HIT asserted this same claim of dilution against Murphy and argued that Murphy possessed minimum contacts based on his blog.  However, the court rejected this argument.  Thus, even imputing Murphy's Internet contacts to Helix Health, these contacts would be insufficient to justify a finding that Helix Health possesses minimum contacts with this forum.

The court concludes that Helix Health's Web site is merely passive and thus "insufficient to subject [Helix Health] to personal jurisdiction." Mink, 190 F.3d at 336.  Helix Health's Web site bears many similarities to the site found passive in Mink. The defendant's site in that case provided information about the defendant's products and services, allowed users to download and print an order form that could be faxed or mailed, and invited users to contact the defendant through either the telephone number or e-mail address provided on the site.  Id. at 337 & n.1.  The site did not allow users to submit orders or make purchases online. Id. at 336-37.  Here, Helix Health's Web site provides users with general information about the company, its mission, its physicians, and its services, as well as studies in the field of personalized medicine.[40]  It allows users to download a "Patient Referral Form"

---

[40]About Helix Health, http://www.helixhealth.org/AboutHelix Health.htm (last visited April 21, 2008); Studies Affecting Your Care: Study Outlines Approach to Genetic Diagnosis in Autism, http://www.helixhealth.org/StudiesAffectingYourCare.htm (last visited April 21, 2008).

but does not allow the form to be submitted online.[41]  Moreover, similar to the site in <u>Mink</u>, Helix Health's site also provides users with Helix Health's telephone and e-mail information that can be used to contact Helix Health.[42]

However, there are two differences between the site at issue in <u>Mink</u> and Helix Health's site.  First, unlike the site in <u>Mink</u>, Helix Health's site provides users with a contact form that may be filled out and submitted online.[43]  Second, the site permits existing Helix Health patients or members who have been issued a "Member ID" and password to access their "electronic medical record patient portal."[44]  The court is not convinced that the online contact form renders Helix Health's site more than passive.  The form merely allows users to "express[] an interest in a commercial product," which is by nature passive.  <u>Revell</u>, 317 F.3d at 472. And although the second difference makes the issue of whether Helix Health's site is passive a closer question, the court concludes that it is still insufficient to warrant subjecting Helix Health to Texas's jurisdiction.

In <u>Neogen Corp. v. Neo Gen Screening, Inc.</u>, 282 F.3d 883 (6th Cir. 2002), the court held that a forum state could exercise

_____

[41]Helix Health, http://www.helixhealth.org/referraloptions.htm.

[42]Contact Helix Health, http://www.helixhealth.org/contact.htm (last visited April 21, 2008).

[43]<u>Id.</u>

[44]Helix Health Members, http://www.helixhealth.org/members.htm (last visited April 21, 2008).

specific jurisdiction over a defendant that permitted residents of the forum who had purchased the defendant's services through the mail to access the defendant's services on the Internet with a password. Id. at 892. Here, however, HIT has produced no evidence indicating that a resident of this forum has purchased Helix Health's services and then accessed Helix Health's services on the Internet, or even indicated that such evidence might exist. Therefore, the court concludes that Helix Health's Web site is insufficient to support a finding that Helix Health has minimum contacts with this forum, and plaintiff's claims against Helix Health will be dismissed for lack of jurisdiction.

## VI.  HIT's Request for Jurisdictional Discovery

At the close of its response, HIT made a request for jurisdictional discovery contingent upon whether the court agreed with HIT's arguments. A district court may in its discretion grant a plaintiff the right to conduct jurisdictional discovery if the plaintiff makes "a preliminary showing of jurisdiction." Fielding, 415 F.3d at 429 (citing Toys "R" Us, Inc., 318 F.3d at 456). A plaintiff makes a preliminary showing by "present[ing] factual allegations that suggest with 'reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state[.]'" Toys "R" Us, Inc., 318 F.3d at 456 (quoting Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992))). In its perfunctory motion, HIT failed

-29-

to make such a showing.  HIT did not indicate what additional facts it intended to discover, and why those facts might make a difference in the court's disposition of the defendants' motion. Accordingly, the court will deny HIT's request.

### VII.    Plaintiff's Motion to Strike and Request for Judicial Notice

After defendants had filed their Reply Memorandum in Support of Their Motion to Dismiss for Lack of Jurisdiction, HIT filed its Motion to Strike and Request for Judicial Notice.  The basis for HIT's motion to strike was defendants' failure to sign either their Memorandum in Support of Their Motion to Dismiss for Lack of Jurisdiction or their Reply Memorandum in Support of the Motion to Dismiss for Lack of Jurisdiction.  Federal Rule of Civil Procedure 11 requires that "[e]very pleading, written motion, and other paper . . . be signed by at least one attorney of record in the attorney's name . . . ."  Fed. R. Civ. P. 11(a).

Although it is undisputed that defendants failed to sign the two memoranda that HIT is moving to strike, a party's mere "failure to sign [a memorandum] will not cause a [memorandum] to be stricken unless the adverse party has been severely prejudiced or misled by the failure to sign." United States v. Kasuboski, 834 F.2d 1345, 1348 (7th Cir. 1987).  HIT has not so much as represented that it suffered any prejudice, let alone severe prejudice, on account of the defendants' failure to sign their memoranda.  Thus, HIT's motion to strike will be denied.

-30-

HIT's motion for judicial notice will also be denied because the motion is moot.  Taking judicial notice of the fact that the Trademark Office indicated that there is a risk of confusion between the marks of HIT and Helix Health will not aid the court in resolving the present jurisdictional issues, and no other issues are before the court at this time.

## VIII.  **Parties' Lack of Civility**

As an examination of the parties' filings with this court will attest, the parties have often forsaken cogent and well-researched arguments for sarcastic and pejorative insults.[45]  This does a great

---

[45]For examples from HIT's pleadings see Plaintiff's Response to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Docket Entry No. 16, pp. 3, 10-11, where HIT charges Murphy with criminal conduct under 18 U.S.C. §§ 1001 and 1623; and Plaintiff's Motion to Strike and Request for Judicial Notice, Docket Entry No. 30, p. 1, where HIT levies personal criticism against defendants' counsel.  For examples from defendants' pleadings see Reply Memorandum in Support of Defendants' Motion to Dismiss for Lack of Jurisdiction, Docket Entry No. 29, p. 18 n.13, where defendants comment on HIT's "penchant for filing or threatening to file superfluous motions or pleadings"; and Defendants' Response to Plaintiff's Motion to Strike Reply Memorandum in Support of Motion to Dismiss, Docket Entry No. 34, p. 2 n.1, where defendants question the motives of plaintiff's counsel.

Moreover, although e-mails between the parties' counsel are not pleadings, they are emblematic of the apparent disdain of both counsel for each other and the court.  See, e.g., Defendants' Reply Memorandum in Support of Their Motion to Dismiss for Lack of Jurisdiction, Docket Entry No. 29, Exhibit C, e-mail from Donna Marie Werner to Scott Weiss (March 31, 2008, 11:03 a.m.) (accusing HIT's counsel of lacking an intention to comply with the rules and of having a goal to bombard defendants and the court with unfounded motions); Defendants' Response to Plaintiff's Motion to Strike Reply Memorandum in Support of Motion to Dismiss, Docket Entry No. 34, Exhibit A, e-mail from Scott Weiss to Donna Marie (continued...)

disservice to the court, the public (whose resources the court wastes when dealing with uncooperative parties), and ultimately to the parties themselves.   Accordingly, the court admonishes the parties and their counsel to treat one another -- and thus this court -- with higher regard and with more civility and courtesy. To assist in this effort, the court attaches to this Memorandum Opinion and Order the Texas Lawyer's Creed.   Counsel for all parties are directed to read and reflect on the Creed, especially paragraphs III.1, III.10, and IV.3, and conduct themselves accordingly.

## IX.   Conclusion and Order

Based on the foregoing analysis, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Docket Entry No. 12) is **GRANTED in part** and **DENIED in part**.   Defendant Helix Health is **DISMISSED** for lack of personal jurisdiction.   Because the court has concluded that it lacks jurisdiction over Murphy for fraud and trademark dilution under the Texas Anti-Dilution Statute, counts IV and VI are also **DISMISSED**; count VII against Murphy is the only count that this court has jurisdiction to resolve.   HIT's motion for discovery made in Plaintiff's Response to Defendants' Motion to Dismiss for

---

[45](...continued)
Warner (March 28, 2008, 3:23 p.m.) ("[Y]our client has issues with the truth."); id., Exhibit C, e-mail from Scott Weiss to Donna Marie Warner (April 8, 2008, 11:43 a.m.) ("[Y]ou are the obstacle in the case that's keeping it from getting resolved.   I'm sure Dr. Murphy appreciates having to pay for your antics.").

Lack of Personal Jurisdiction (Docket Entry No. 16) is **DENIED**. Plaintiff's Motion to Strike and Request for Judicial Notice (Docket Entry No. 30) is also **DENIED**.

    **SIGNED** at Houston, Texas, on this 25th day of April, 2008.

                              SIM LAKE
               UNITED STATES DISTRICT JUDGE

# Texas Lawyer's Creed

I am a lawyer. I am entrusted by the People of Texas to preserve and improve our legal system. I am licensed by the Supreme Court of Texas. I must therefore abide by the Texas Disciplinary Rules of Professional Conduct, but I know that professionalism requires more than merely avoiding the violation of laws and rules. I am committed to this creed for no other reason than it is right.

## I. OUR LEGAL SYSTEM

A lawyer owes to the administration of justice personal dignity, integrity, and independence. A lawyer should always adhere to the highest principles of professionalism.

**1.** I am passionately proud of my profession. Therefore, "My word is my bond."

**2.** I am responsible to assure that all persons have access to competent representation regardless of wealth or position in life.

**3.** I commit myself to an adequate and effective pro bono program.

**4.** I am obligated to educate my clients, the public, and other lawyers regarding the spirit and letter of this Creed.

**5.** I will always be conscious of my duty to the judicial system.

## II. LAWYER TO CLIENT

A lawyer owes to a client allegiance, learning, skill, and industry. A lawyer shall employ all appropriate means to protect and advance the client's legitimate rights, claims, and objectives. A lawyer shall not be deterred by any real or imagined fear of judicial disfavor or public unpopularity, nor be influenced by mere self-interest.

**1.** I will advise my client of the contents of this creed when undertaking representation.

**2.** I will endeavor to achieve my client's lawful objectives in legal transactions and in litigation as quickly and economically as possible.

**3.** I will be loyal and committed to my client's lawful objectives, but I will not permit that loyalty and commitment to interfere with my duty to provide objective and independent advice.

**4.** I will advise my client that civility and courtesy are expected and are not a sign of weakness.

**5.** I will advise my client of proper and expected behavior.

**6.** I will treat adverse parties and witnesses with fairness and due consideration. A client has no right to demand that I abuse anyone or indulge in any offensive conduct.

**7.** I will advise my client that we will not pursue conduct which is intended primarily to harass or drain the financial resources of the opposing party.

**8.** I will advise my client that we will not pursue tactics which are intended primarily for delay.

**9.** I will advise my client that we will not pursue any course of action which is without merit.

**10.** I will advise my client that I reserve the right to determine whether to grant accommodations to opposing counsel in all matters that do not adversely affect my client's lawful objectives. A client has no right to instruct me to refuse reasonable requests made by other counsel.

**11.** I will advise my client regarding the availability of mediation, arbitration, and other alternative methods of resolving and settling disputes.

## III. LAWYER TO LAWYER

A lawyer owes to opposing counsel, in the conduct of legal transactions and the pursuit of litigation, courtesy, candor, cooperation, and scrupulous observance of all agreements and mutual understandings. Ill feelings between clients shall not influence a lawyer's conduct, attitude, or demeanor toward opposing counsel. A lawyer shall not engage in unprofessional conduct in retaliation against other unprofessional conduct.

**1.** I will be courteous, civil, and prompt in oral and written communications.

**2.** I will not quarrel over matters of form or style, but I will concentrate on matters of substance.

**3.** I will identify for other counsel or parties all changes I have made in documents submitted for review.

**4.** I will attempt to prepare documents which correctly reflect the agreement of the parties. I will not include provisions which have not been agreed upon or omit provisions which are necessary to reflect the agreement of the parties.

**5.** I will notify opposing counsel, and, if appropriate, the Court or other persons, as soon as practicable, when hearings, depositions, meetings, conferences or closings are cancelled.

**6.** I will agree to reasonable requests for extensions of time and for waiver of procedural formalities, provided legitimate objectives of my client will not be adversely affected.

**7.** I will not serve motions or pleadings in any manner that unfairly limits another party's opportunity to respond.

**8.** I will attempt to resolve by agreement my objections to matters contained in pleadings and discovery requests and responses.

**9.** I can disagree without being disagreeable. I recognize that effective representation does not require antagonistic or obnoxious behavior. I will neither encourage nor knowingly permit my client or anyone under my control to do anything which would be unethical or improper if done by me.

**10.** I will not, without good cause, attribute bad motives or unethical conduct to opposing counsel nor bring the profession into disrepute by unfounded accusations of impropriety. I will avoid disparaging personal remarks or acrimony towards opposing counsel, parties and witnesses. I will not be influenced by any ill feeling between clients. I will abstain from any allusion to personal peculiarities or idiosyncrasies of opposing counsel.

**11.** I will not take advantage, by causing any default or dismissal to be rendered, when I know the identity of an opposing counsel, without first inquiring about that counsel's intention to proceed.

**12.** I will promptly submit orders to the Court. I will deliver copies to opposing counsel before or contemporaneously with submission to the Court. I will promptly approve the form of orders which accurately reflect the substance of the rulings of the Court.

**13.** I will not attempt to gain an unfair advantage by sending the Court or its staff correspondence or copies of correspondence.

**14.** I will not arbitrarily schedule a deposition, court appearance, or hearing until a good faith effort has been made to schedule it by agreement.

**15.** I will readily stipulate to undisputed facts in order to avoid needless costs or inconvenience for any party.

**16.** I will refrain from excessive and abusive discovery.

**17.** I will comply with all reasonable discovery requests. I will not resist discovery requests which are not objectionable. I will not make objections nor give instructions to a witness for the purpose of delaying or obstructing the discovery process. I will encourage witnesses to respond to all deposition questions which are reasonably understandable. I will neither encourage nor permit my witness to quibble about words where their meaning is reasonably clear.

**18.** I will not seek Court intervention to obtain discovery which is clearly improper and not discoverable.

**19.** I will not seek sanctions or disqualification unless it is necessary for protection of my client's lawful objectives or is fully justified by the circumstances.

## IV. LAWYER AND JUDGE

Lawyers and judges owe each other respect, diligence, candor, punctuality, and protection against unjust and improper criticism and attack. Lawyers and judges are equally responsible to protect the dignity and independence of the Court and the profession.

**1.** I will always recognize that the position of judge is the symbol of both the judicial system and administration of justice. I will refrain from conduct that degrades this symbol.

**2.** I will conduct myself in Court in a professional manner and demonstrate my respect for the Court and the law.

**3.** I will treat counsel, opposing parties, the Court, and members of the Court staff with courtesy and civility.

**4.** I will be punctual.

**5.** I will not engage in any conduct which offends the dignity and decorum of proceedings.

**6.** I will not knowingly misrepresent, mischaracterize, misquote or miscite facts or authorities to gain an advantage.

**7.** I will respect the rulings of the Court.

**8.** I will give the issues in controversy deliberate, impartial and studied analysis and consideration.

**9.** I will be considerate of the time constraints and pressures imposed upon the Court, Court staff and counsel in efforts to administer justice and resolve disputes.