IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

HEALIX INFUSION THERAPY, INC.,    §
                                  §
            Plaintiff,            §
                                  §
v.                                §        CIVIL ACTION NO. H-08-0337
                                  §
STEVEN MURPHY,                    §
                                  §
            Defendant.            §

### MEMORANDUM OPINION AND ORDER

Pending before the court are Plaintiff Healix Infusion Therapy, Inc.'s ("HIT") Motion for Final Summary Judgment (Docket Entry No. 49) and defendant Steven Murphy's Cross-Motion for Summary Judgment (Docket Entry No. 58). For the reasons stated below, HIT's motion will be denied, and Murphy's motion will be granted.

### I.  Factual and Procedural Background

HIT is a Texas corporation that holds a federally registered trademark for the mark "Healix."[1]  Murphy is a physician who specializes in the field of genetics and "personalized medicine."

In March of 2005, while still in medical school and completing his residency, Murphy registered the Internet domain name[2]

_____

[1] Plaintiff Healix Infusion Therapy, Inc.'s Amended Motion for Summary Judgment and Brief in Support Thereof, Docket Entry No. 50, Exhibit A.

[2] A "domain name" is "any alphanumeric designation which is registered with or assigned by any domain name registrar, domain
(continued...)

helixhealth.org.   Murphy registered this domain name because he intended eventually to create a genetic counseling business bearing the name "Helix Health."[3]  In the same year Murphy also registered the domain names myhelixhealth.com and myhelixhealth.org, the registration of which was renewed in 2008.[4]  When Murphy registered these domain names in 2005 he did not know that HIT had registered the mark "Healix" with the United States Patent and Trademark Office ("USPTO").[5]

Murphy has registered many other domain names,[6] each with the intent of eventually creating a Web site in connection with the respective domain name.[7]  One domain name Murphy registered,

---

[2](...continued)
name registry, or other domain name registration authority as part of an electronic address on the Internet."  15 U.S.C. § 1127.

[3]Defendant Steven Murphy's Response to Plaintiff's Amended Motion for Summary Judgment and Memorandum in Support of Defendant's Cross-Motion for Summary Judgment, Docket Entry No. 59, Declaration of Defendant Steven Murphy ¶¶ 2, 20.

[4]Plaintiff Healix Infusion Therapy, Inc.'s Amended Motion for Summary Judgment and Brief in Support Thereof, Docket Entry No. 50, Exhibits D & E; see also id., Exhibit I, Murphy Depo. pp. 33, 38-39, 59-60, 68-69.

[5]Defendant Steven Murphy's Response to Plaintiff's Amended Motion for Summary Judgment and Memorandum in Support of Defendant's Cross-Motion for Summary Judgment, Docket Entry No. 59, Murphy Decl. ¶ 16.

[6]See Plaintiff Healix Infusion Therapy, Inc.'s Amended Motion for Summary Judgment and Brief in Support Thereof, Docket Entry No. 50, Exhibit R.

[7]Defendant Steven Murphy's Response to Plaintiff's Amended Motion for Summary Judgment and Memorandum in Support of Defendant's Cross-Motion for Summary Judgment, Docket Entry No. 59, Murphy Decl. ¶ 19.

23butnotme.com, is a play on the mark and corresponding Web site of another genetic counseling company, 23andMe, which maintains the Web site 23andme.com.  Murphy registered this domain name with the intent of creating a Web site solely to raise awareness about that company's methods and product, but has not yet created such a Web site.[8]  Between July of 2006 and October of 2007, Murphy also registered the domain names genesandmeds.com, genesandfood.com, genesandhealth.org, genesandhealth.com, and genesandhealth.info.[9] DNA Direct, another company that offers genetic testing and information on genetics, maintains a Web site with the domain name genesanddrugs.com;[10] however, it is not known whether DNA Direct held a registered mark bearing that name (genes and drugs) when Murphy registered genesandmeds.com, genesandfood.com, genesandhealth.org, genesandhealth.com, and genesandhealth.info. Murphy has not offered to sell 23butnotme.com, genesandmeds.com, genesandfood.com, genesandhealth.org, genesandhealth.com, or genesandhealth.info to these respective companies.[11]  Other than

---

[8]Plaintiff Healix Infusion Therapy, Inc.'s Amended Motion for Summary Judgment and Brief in Support Thereof, Docket Entry No. 50, Exhibit I, Murphy Depo. pp. 62-67.

[9]See id., Exhibit R.

[10]Id., Exhibit I, Murphy Depo. p. 68; Plaintiff's Reply to Defendant's Response to the Amended Motion for Summary Judgment and Response to Defendant's Cross-Motion for Summary Judgment, Docket Entry No. 61, Exhibit K.

[11]Defendant Steven Murphy's Response to Plaintiff's Amended Motion for Summary Judgment and Memorandum in Support of (continued...)

these domain names, and those related to Helix Health LLC, none of Murphy's other registered domain names appear to be similar to those of other companies or mark owners.

In December of 2006 Murphy made good on his intention to start a genetic counseling business by incorporating Helix Health LLC in Delaware. During the same month he filed an application with the United States Patent and Trademark Office ("USPTO") to register the stylized mark "Helix Health." Murphy also transferred the domain name helixhealth.org to Helix Health LLC. Roughly six months later, Helix Health LLC used that domain name to launch its own Web site, which is dedicated to explaining what Helix Health is and does,[12] informing visitors of the benefits of "personalized medicine," and providing them with an opportunity to inquire about how they may receive such benefits.[13] Pragmatix, a Web hosting service, was later given control over the Helix Health Web site.[14]

---

[11](...continued)
Defendant's Cross-Motion for Summary Judgment, Docket Entry No. 59, Murphy Decl. ¶ 19.

[12]Helix Health LLC is only one of several Helix Health entities. Helix Health LLC provides administrative support to Helix Health entities incorporated in New York and Connecticut. Id. at ¶ 4.

[13]Id. ¶¶ 7-9; see also Helix Health, http://www.helixhealth.org (last visited August 29, 2008).

[14]Defendant Steven Murphy's Response to Plaintiff's Amended Motion for Summary Judgment and Memorandum in Support of Defendant's Cross-Motion for Summary Judgment, Docket Entry No. 59, Murphy Decl. ¶¶ 10-11; see also Plaintiff Healix Infusion Therapy, Inc.'s Amended Motion for Summary Judgment and Brief in Support Thereof, Docket Entry No. 50, Exhibit Q.

-4-

Roughly eight months after Helix Health filed its application to register its mark, HIT filed an opposition to Helix Health's application with the USPTO on the grounds that Helix Health's mark was too similar to HIT's "Healix" mark.  A few months later, in January of 2008, Murphy contacted HIT by telephone regarding HIT's objections and spoke with HIT's counsel, Irwin Silverstein and Scott Weiss.  While they discussed Murphy's use of the name "Helix Health" and HIT's reasons for opposing Murphy's application, Murphy expressed to Silverstein and Weiss his hope that they could "work something out."[15]  A short time later Murphy called HIT again and spoke with Weiss.  During this phone call Murphy and Weiss again discussed Murphy's use of the helixhealth.org domain name, and Murphy inquired as to whether Murphy could buy HIT's mark, or whether HIT would buy the helixhealth.org domain name from him.[16] Instead of buying the helixhealth.org domain name, or selling HIT's mark to Murphy, Weiss advised Murphy that his continued use of the Helix Health name and of the helixhealth.org domain name would likely result in a lawsuit.[17]

---

[15]Plaintiff Healix Infusion Therapy, Inc.'s Amended Motion for Summary Judgment and Brief in Support Thereof, Docket Entry No. 50, Exhibit R, Affidavit of Irwin Silverstein.

[16]Defendant Steven Murphy's Response to Plaintiff's Amended Motion for Summary Judgment and Memorandum in Support of Defendant's Cross-Motion for Summary Judgment, Docket Entry No. 59, Exhibit 2, Deposition of Scott Weiss pp. 48-49, 58-59.

[17]<u>Id.</u>

HIT then sent Murphy a cease-and-desist letter on January 24, 2008, requesting that Murphy discontinue his use of the Helix Health name or domain name,[18] and then, a week later, filed this action against Helix Health LLC, and later against Murphy.[19] In its complaint HIT alleged causes of action against Helix Health LLC for trademark infringement, trademark dilution under the Texas Anti-Dilution Statute, and false designation; and causes of action against Murphy for fraud, trademark dilution under the Texas Anti-Dilution Statute, and violation of the Anti-Cybersquatting and Consumer Protection Act ("ACPA"), codified in 15 U.S.C. § 1125(d).[20]

Upon Helix Health and Murphy's motion, the court later dismissed all but one of those causes of action -- HIT's claim against Murphy under the ACPA – because the court concluded that HIT had failed to establish that the court could exercise personal jurisdiction over Helix Health for any claim, or over Murphy for any claim other than its ACPA claim.[21] The parties then conducted discovery as to HIT's ACPA claim, at the conclusion of which both parties moved for summary judgment.

---

[18]Plaintiff Healix Infusion Therapy, Inc.'s Amended Motion for Summary Judgment and Brief in Support Thereof, Docket Entry No. 50, p. 2.

[19]Original Complaint, Docket Entry No. 1; Plaintiff's First Amended Complaint, Docket Entry No. 7.

[20]See Plaintiff's First Amended Complaint, Docket Entry No. 7.

[21]Memorandum Opinion and Order, Docket Entry No. 37.

## II.  <u>Standard of Review</u>

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.  Fed. R. Civ. P. 56(c).  Under Rule 56(c) summary judgment is appropriate if "after adequate time for discovery and upon motion," the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Celotex Corp. v. Catrett</u>, 106 S.Ct. 2548, 2552 (1986).  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505, 2511 (1986).  Evidence that "is merely colorable, or is not significantly probative," is not "sufficient evidence" to prevent summary judgment.  <u>Id.</u> (citations omitted); <u>see also</u> <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (<u>en banc</u>) ("[S]ummary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." (internal quotation marks omitted)).

Where, as here, both parties have moved for summary judgment, both "motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law."

Shaw Constructors v. ICF Kaiser Engineers, Inc., 395 F.3d 533, 538-
39 (5th Cir. 2004).   A party moving for summary judgment "must
'demonstrate the absence of a genuine issue of material fact,' but
need not negate the elements of the nonmovant's case."   Little, 37
F.3d at 1075 (quoting Celotex, 106 S.Ct. at 2553-2554).   If the
moving party meets this burden, Rule 56(c) requires the nonmovant
to go beyond the pleadings and show by affidavits, depositions,
answers to interrogatories, admissions on file, or other admissible
evidence that specific facts exist over which there is a genuine
issue for trial.   Id. (citing Celotex, 106 S.Ct. at 2553-2554).
"Rule 56 does not impose upon [a] district court a duty to sift
through the record in search of evidence to support a party's
opposition to summary judgment." Ragas v. Tennessee Gas Pipeline
Co., 136 F.3d 455, 458 (5th Cir. 1998) (internal quotation marks
omitted).   In reviewing the evidence "the court must draw all
reasonable inferences in favor of the nonmoving party, and it may
not make credibility determinations or weigh the evidence." Reeves
v. Sanderson Plumbing Products Inc., 120 S.Ct. 2097, 2110 (2000).
Factual controversies are to be resolved in favor of the nonmovant,
"but only when . . . both parties have submitted evidence of
contradictory facts. [A court] do[es] not, however, in the absence
of any proof, assume that the nonmoving party could or would prove
the necessary facts." Little, 37 F.3d at 1075 (emphasis in the
original).

### III.   <u>Analysis</u>

The advent of the Internet has presented special challenges to the rights of intellectual property owners.   The Internet has brought significant challenges to copyright owners;[22] and trademark owners are no exception.   The rise of the Internet as a means of transacting commerce gave rise to a practice known as "cybersquatting," "the practice of registering 'well-known brand names as Internet domain names' in order to force the rightful owners of the marks 'to pay for the right to engage in electronic commerce under their own brand name.'"   <u>Virtual Works, Inc. v. Volkswagen of America, Inc.</u>, 238 F.3d 264, 267 (4th Cir. 2001) (quoting S. Rep. No. 106-140, at 4 (1999)).   Accordingly, "'to protect consumers and American businesses, to promote the growth of online commerce, and to provide clarity in the law for trademark owners by prohibiting the <u>bad-faith and abusive registration</u> of distinctive marks as Internet domain names with the intent to profit from the goodwill associated with such marks,'" Congress enacted the ACPA.   <u>Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc.</u>, 202 F.3d 489, 495 (2d Cir. 2000) (quoting S. Rep. No. 106-140, at 4 (1999)) (emphasis added).

The ACPA makes a person who in bad faith seeks to profit from the goodwill associated with an owner's mark liable to the mark

---

[22]<u>See, e.g.</u>, <u>Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.</u>, 125 S.Ct. 2764 (2005); <u>BMG Music v. Gonzalez</u>, 430 F.3d 888 (7th Cir. 2005); <u>A&M Records, Inc. v. Napster, Inc.</u>, 239 F.3d 1004 (9th Cir. 2001).

owner for damages.  15 U.S.C. § 1125(d)(1)(A); see also TMI, Inc. v. Maxwell, 368 F.3d 433, 436 (5th Cir. 2004) ("ACPA . . . bases liability on a bad faith intent to profit.").  To prevail on a claim under the ACPA a mark owner must establish that (1) the defendant registered, trafficked, or used a domain name that is confusingly similar to the owner's mark; (2) the mark at issue was distinctive at the time the defendant registered, trafficked, or used the domain name; and (3) the defendant's registration, trafficking, or use of the domain name was motivated by a bad faith intent to profit from the owner's mark.  15 U.S.C. § 1125(d)(1)(A)(i)-(ii); accord Sporty's Farm, 202 F.2d at 497-99.

HIT argues in its motion for summary judgment that the undisputed facts show that Murphy violated the ACPA by registering and using the Helix Health domain names helixhealth.org, myhelixhealth.org, and myhelixhealth.com.  Murphy argues not only that HIT is not entitled to summary judgment (because of the presence of genuine issues of material fact), but that he is entitled to summary judgment because HIT has failed to produce sufficient evidence to support a claim under the ACPA for trial.  The court agrees with Murphy, and will enter summary judgment for him because HIT has failed to produce sufficient evidence to allow a jury to conclude that Murphy's registration of the Helix Health domain names was motivated by a bad faith intent to profit from HIT's "Healix" mark.

The ACPA does not define "bad faith."  Instead, the ACPA provides a list of nine factors that a court "may consider" to determine whether a person has acted with a bad faith intent to profit from an owner's mark:

(I) the trademark or other intellectual property rights of the person, if any, in the domain name;

(II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such

domain names, or dilutive of famous marks of others that
are famous at the time of registration of such domain
names, without regard to the goods or services of the
parties; and

(IX) the extent to which the mark incorporated in the
person's domain name registration is or is not
distinctive and famous within the meaning of subsection
(c) of this section.

15 U.S.C. § 1125(d)(1)(B)(i). The first four factors, subsections
(I)-(IV), are indicative of good faith, while the last five,
subsections (V)-(IX), are indicative of bad faith. A court need
not consider all of the factors when determining whether a
defendant acted with a bad faith intent to profit from an owner's
mark. Virtual Works, Inc., 238 F.3d at 269. "There is no simple
formula for evaluating and weighing these factors. For example,
courts do not simply count up which party has more factors in its
favor after the evidence is in." Harrods Ltd. v. Sixty Internet
Domain Names, 302 F.3d 214, 234 (4th Cir. 2002). "The factors are
given to courts as a guide, not as a substitute for careful
thinking about whether the conduct at issue is motivated by a bad
faith intent to profit." Lucas Nursery & Landscaping, Inc. v.
Grosse, 359 F.3d 806, 810 (6th Cir. 2004) (emphasis added).
Rather, "the most important grounds for finding bad faith 'are the
unique circumstances of th[e] case, which do not fit neatly into
the specific factors enumerated by Congress, but may nevertheless
be considered under the statute.'" Virtual Works, Inc., 238 F.3d
at 268 (quoting Sporty's Farm, 202 F.3d at 499). Courts look to
the totality of the circumstances when determining whether a

-12-

person's registration of a domain name was motivated by a bad faith intent to profit from an owner's mark.  Id. at 270 (construing 15 U.S.C. § 1125(d)(1)(B)(i)).

Because the court need not "march through" all of the statutory factors listed in § 1125(d)(1), see Virtual Works, Inc., 238 F.3d at 269, the court will focus only on those factors that indicate whether Murphy was motivated by a bad-faith intent to profit from HIT's mark because that is the issue on which HIT has the burden of proving at trial.  Looking at only the five bad-faith factors, see 15 U.S.C. § 1125(d)(1)(B)(i)(V)-(IX), the court concludes that HIT has failed to produce sufficient evidence to support even a triable issue as to whether Murphy was motivated by a bad faith intent to profit from HIT's mark when he registered the Helix Health domain names.

First, HIT has not submitted any (admissible) evidence that would support a finding that by registering the Helix Health domain names Murphy intended to divert consumers from HIT's online location to a Web site that could harm the goodwill represented by HIT's mark by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site.  15 U.S.C. § 1125(d)(1)(B)(i)(V).  To support its argument on this factor HIT has submitted a document that it asserts contains "meta-tags"[23] from

---

[23]"Meta-tags," also known as "meta-data," are HTML code that is invisible to Internet users and are used to alert search engines (such as Yahoo! and Google) to the particular contents of a Web
(continued...)

the Helix Health Web site.[24]  However, as Murphy points out,[25] HIT
has failed to provide the court with any basis with which to
conclude that the document is what it purports to be; in other
words, HIT has failed to properly authenticate the document.
"Unauthenticated documents are improper as summary judgment
evidence." <u>King v. Dogan</u>, 31 F.3d 344, 347 (5th Cir. 1994).

But even if the court accepted and credited the document, it
would not support HIT's argument.  Although the document could
arguably show an attempt to divert, to qualify as evidence of bad
faith HIT must show that Murphy intended to divert consumers to a
site that could harm the goodwill represented by HIT's mark "either
for commercial gain or with the intent to tarnish or disparage the
mark[.]"  15 U.S.C. § 1125(d)(1)(B)(i)(V).  HIT has not presented
evidence or even argument indicating that the Helix Health Web site
(the "site" that the helixhealth.org domain name diverts consumers
to) could harm the goodwill associated with HIT's mark for
commercial gain. <u>Cf.</u> <u>Sporty's Farm</u>, 202 F.3d at 499 (evidence
indicated that defendant used owner's mark in a domain name to

---

[23](...continued)
site, which enables the search engine, and thus Internet users, to
more easily find a particular site.  <u>See</u> <u>Retail Serv. Inc. v.
Freebies Publ'g</u>, 364 F.3d 535, 541 n.1 (4th Cir. 2004).

[24]See Plaintiff Healix Infusion Therapy, Inc.'s Amended Motion
for Summary Judgment and Brief in Support Thereof, Docket Entry
No. 50, Exhibit P.

[25]Defendant Steven Murphy's Reply Brief in Support of His
Cross-Motion for Summary Judgment, Docket Entry No. 63, pp. 7-8.

-14-

prevent plaintiff from competing with the defendant).  Moreover, although HIT has both alleged[26] and asserted[27] that the Helix Health Web site will tarnish its mark, it has not submitted any evidence indicating that the Helix Health Web site was intended to tarnish or disparage the HIT's mark.  Cf. E. & J. Gallo Winery v. Spider Webs Ltd., 286 F.3d 270, 276 (5th Cir. 2002) (evidence showed that after defendant used owner's mark in its domain name, it opened a Web site critical of the owner and its business); PETA v. Doughney, 263 F.3d 359, 369 (4th Cir. 2001) (evidence showed that defendant used owner's mark to divert Internet users to a Web site that contained information antithetical to the owner's purpose and goodwill).[28]

Nor has HIT presented evidence that would support a finding that Murphy "offer[ed] to transfer, sell, or otherwise assign the [Helix Health] domain names to [HIT] or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services," or

---

[26]Plaintiff's First Amended Complaint, Docket Entry No. 7, ¶ 23.

[27]Plaintiff Healix Infusion Therapy, Inc.'s Amended Motion for Summary Judgment and Brief in Support Thereof, Docket Entry No. 50, p. 11; Plaintiff's Reply to Defendant's Response to the Amended Motion for Summary Judgment and Response to Defendant's Cross-Motion for Summary Judgment, Docket Entry No. 61, p. 4.

[28]Also absent is any evidence indicating that the Helix Health Web site could harm HIT's goodwill "by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site[.]"  15 U.S.C. § 1125(d)(1)(B)(i)(V).

that Murphy's "prior conduct indicat[ed] a pattern of such conduct." 15 U.S.C. § 1125(d)(1)(B)(i)(VI). Although Murphy denies ever offering to sell HIT the helixhealth.org domain name, HIT has produced sufficient evidence to create a fact issue whether Murphy did make such an offer.[29] However, this evidence without more is insufficient to raise a genuine issue as to whether Murphy was motivated by a bad faith intent to profit from HIT's mark: "[A] mere offer to sell a domain name is not itself evidence of unlawful trafficking." Virtual Works, Inc., 238 F.3d at 270 (citing H.R. Conf. Rep. No. 106-464, at 111 (1999)). As noted above, to constitute evidence of bad faith an offer to sell a domain name must also be "for financial gain without . . . having an intent to use[] the domain name in the bona fide offering of any goods or services[.]" 15 U.S.C. § 1125(d)(1)(B)(i)(VI). In his affidavit and deposition Murphy made it clear that his purpose in registering the Helix Health domain names was "[t]o start a

_____

[29]See Plaintiff Healix Infusion Therapy, Inc.'s Amended Motion for Summary Judgment and Brief in Support Thereof, Docket Entry No. 50, Affidavit of Irwin Silverstein; Defendant Steven Murphy's Response to Plaintiff's Amended Motion for Summary Judgment and Memorandum in Support of Defendant's Cross-Motion for Summary Judgment, Docket Entry No. 59, Exhibit 2, Deposition of Scott Weiss pp. 48-49, 58-59. The court rejects Murphy's argument that the word "offer" used in § 1125(d) was intended to mean "offer" in the contractual sense. Courts have routinely found evidence of bad faith under this factor from much less than a contract-like offer. For example, in PETA the defendant was found to have made an offer for purposes of this factor after he made statements on his Web site and in the press that the mark owner should make him an offer or attempt to settle with him as evidence of defendant's bad faith intent. 263 F.3d at 369.

business,"[30] specifically "the business of genetic counseling and the practice of medicine under the name Helix Health."[31]  HIT has not produced evidence that would indicate anything to the contrary.

Nor has HIT introduced evidence indicating that Murphy engaged in "a pattern of such conduct."  15 U.S.C. § 1125(d)(1)(B)(i)(VI). HIT has offered evidence that Murphy registered the domain name genomicist.com, and offered that name for sale to the public.[32] Although Murphy disputes this evidence,[33] even if it were accepted as true, the evidence does not demonstrate an attempt by Murphy to sell a domain name to the owner of the mark or that the attempt to sell was not made as a good faith offering of goods or services. 15 U.S.C. § 1125(d)(1)(B)(i)(VI).  In fact, HIT has not even produced evidence indicating that someone owns a mark for the name "genomicist."  Accordingly, this evidence is nothing more than evidence of a mere offer to sell a domain name.  The court also

---

[30]Plaintiff Healix Infusion Therapy, Inc.'s Amended Motion for Summary Judgment and Brief in Support Thereof, Docket Entry No. 50, Murphy Depo. p. 40; see also id. at 41-44.

[31]Defendant Steven Murphy's Response to Plaintiff's Amended Motion for Summary Judgment and Memorandum in Support of Defendant's Cross-Motion for Summary Judgment, Docket Entry No. 59, Murphy Decl. ¶ 3.

[32]Plaintiff's Reply to Defendant's Response to the Amended Motion for Summary Judgment and Response to Defendant's Cross-Motion for Summary Judgment, Docket Entry No. 61, Exhibit H.

[33]Defendant Steven Murphy's Response to Plaintiff's Amended Motion for Summary Judgment and Memorandum in Support of Defendant's Cross-Motion for Summary Judgment, Docket Entry No. 59, p. 9.

notes that although in other contexts HIT makes much of Murphy's registration of the domain names 23butnotme.com, genesandmeds.com, genesandfood.com, genesandhealth.org, genesandhealth.com, and genesandhealth.info,[34] HIT has not produced any evidence that Murphy has attempted to sell those domain names to the companies (23andMe and DNA Direct) that may have an interest in them.

HIT has also failed to show that Murphy provided "material and misleading false contact information <u>when applying</u> for the registration of the [helixhealth.org] domain name," or that Murphy intentionally failed "to maintain accurate contact information[.]" 15 U.S.C. § 1125(d)(1)(B)(i)(VII) (emphasis added).[35] HIT presented evidence that the registrant's name listed in the registration information of the helixhealth.org domain name is incorrect, as is the registrant's listed phone number.[36] According to HIT, the registrant is falsely listed as "Pragmatix Billing" and the registrant's phone number is incomplete. The problem with this

_____

[34]See, e.g., Plaintiff's Reply to Defendant's Response to the Amended Motion for Summary Judgment and Response to Defendant's Cross-Motion for Summary Judgment, Docket Entry No. 61, pp. 6-7.

[35]HIT has made no attempt to show that Murphy's "prior conduct indicat[es] a pattern of such conduct." 15 U.S.C. § 1125(d)(1)(B)(i)(VII).

[36]Plaintiff Healix Infusion Therapy, Inc.'s Amended Motion for Summary Judgment and Brief in Support Thereof, Docket Entry No. 50, Exhibit Q; Defendant Steven Murphy's Response to Plaintiff's Amended Motion for Summary Judgment and Memorandum in Support of Defendant's Cross-Motion for Summary Judgment, Docket Entry No. 59, Murphy Decl. ¶ 11.

-18-

evidence is that it fails to indicate that Murphy provided this incorrect information when he applied for the registration of the helixhealth.org domain name.  Moreover, HIT's evidence does not indicate that Murphy intentionally failed to maintain accurate registration information.  Both in his deposition and in his affidavit Murphy denied entering the incorrect information contained in HIT's evidence, and suggested instead that the responsible party was probably Pragmatix Billing.[37]  Instead of rebutting Murphy's denials with evidence, however, HIT was content merely to assert that "in all likelihood it would have been Murphy" that entered the information.[38]  In the face of Murphy's summary judgment motion HIT must produce evidence that Murphy failed to maintain accurate contact information and that he did so intentionally.[39]

---

[37]Id., Murphy Depo. pp. 34-36; Defendant Steven Murphy's Response to Plaintiff's Amended Motion for Summary Judgment and Memorandum in Support of Defendant's Cross-Motion for Summary Judgment, Docket Entry No. 59, Murphy Decl. ¶ 11.

[38]Plaintiff Healix Infusion Therapy, Inc.'s Amended Motion for Summary Judgment and Brief in Support Thereof, Docket Entry No. 50, p. 12.

[39]The court rejects HIT's arguments that Murphy is not entitled to summary judgment because he cannot prove that he is not the registrant or because he has not proven that it was Pragmatix that entered the incorrect contact information.  See Plaintiff's Reply to Defendant's Response to the Amended Motion for Summary Judgment and Response to Defendant's Cross-Motion for Summary Judgment, Docket Entry No. 61, pp. 5-6.  At trial it would be HIT's burden, not Murphy's, to prove a bad-faith intent based on (1) Murphy's failure to enter accurate contact information when applying for the registration of the domain name or (2) his intentional failure to maintain accurate contact information.  Murphy has no obligation on summary judgment to negate the elements of HIT's claims.

Whether HIT has submitted evidence supporting a finding of bad faith under the fourth bad-faith factor, 15 U.S.C. § 1125(d)(1)(B)(i)(VIII), is a closer question.  HIT argues that Murphy's registration of helixhealth.org, myhelixhealth.org, myhelixhealth.com, 23butnotme.com, genesandmeds.com, genesandfood. com, genesandhealth.org, genesandhealth.com, and genesandhealth. info is evidence of his bad faith intent to profit from HIT's mark.[40]   A person's mere registration of several domain names, without more, is not evidence of bad faith.   <u>See</u> 15 U.S.C. § 1125(d)(1)(B)(i)(VIII).  To qualify as evidence of bad faith the evidence must show that Murphy not only registered multiple domain names, but that he did so knowing that his domain names are identical or confusingly similar to the marks of other owners at the time of registration, that the other owners' marks are distinctive, and that those marks were distinctive at the time Murphy registered the several domain names.   <u>See</u> 15 U.S.C. § 1125(d)(1)(B)(i)(VIII).

With regard to the helixhealth.org domain name, HIT has not submitted any evidence indicating that Murphy knew that the domain name was confusingly similar to HIT's mark when Murphy registered the name in 2005.   As for the domain names 23butnotme. com,

---

[40]Plaintiff Healix Infusion Therapy, Inc.'s Amended Motion for Summary Judgment and Brief in Support Thereof, Docket Entry No. 50, pp. 13-15; Plaintiff's Reply to Defendant's Response to the Amended Motion for Summary Judgment and Response to Defendant's Cross-Motion for Summary Judgment, Docket Entry No. 61, pp. 6-7.

genesandmeds.com, genesandfood.com, genesandhealth.org, genesandhealth.com, and genesandhealth.info, HIT has not submitted evidence indicating that 23andMe or DNA Direct owned a "distinctive" mark as to those names, or that those marks were distinctive when Murphy registered his domain names.

However, whether Murphy's re-registration of the domain names myhelixhealth.org and myhelixhealth.com in 2008 and after this litigation began is evidence of bad faith is a closer question. HIT argues that the date that a person re-registered a domain name is treated as the date that a person "registered" the domain name for purposes of the ACPA. Thus, HIT argues, by re-registering the myhelixhealth.org and myhelixhealth.com domain names after he was aware of HIT's mark and the similarity the Helix Health domain names bore to that mark, Murphy acted in bad faith. There is some support for HIT's argument. See Schmidheiny v. Weber, 319 F.3d 581, 582-83 (3d Cir. 2003) (holding that for purposes of 15 U.S.C. § 1129 a person's re-registration of a domain name is treated the same as an initial registration). However, even if the court assumed that Murphy re-registered these Helix Health domain names knowing that they were confusingly similar to HIT's mark, and even if the court assumed that HIT's mark was distinctive when Murphy re-registered the domain names, the court concludes that evidence of this one factor is insufficient to raise a genuine fact issue as to whether Murphy's registration of the Helix Health domain names was motivated by a bad faith intent to profit from HIT's mark.

Central to the court's conclusion that HIT has failed to raise a triable issue as to Murphy's bad-faith motivation to register the Helix Health domain names are the undisputed circumstances unique to this case.  HIT has not presented any evidence disputing the fact that Murphy did not know that HIT owned a federally registered mark when he registered the domain name helixhealth.org, or the domain names myhelixhealth.org or myhelixhealth.com, in 2005.  HIT has not submitted any evidence indicating that Murphy knew that HIT owned the "Healix" mark, that he knew HIT's mark had valuable goodwill, or that he knew that HIT even existed when he registered these domain names in 2005.  HIT has not submitted any evidence disputing the fact that when he registered the Helix Health domain names in 2005, Murphy did so with the intent of later using those domain names in connection with a legitimate business.  Nor has HIT disputed the fact that Murphy started that legitimate business within a short time after registering those domain names.  Yet, as several cases demonstrate, evidence that the defendant knew that the owner's mark had valuable goodwill at the time the defendant registered the domain name is highly relevant to a finding of bad faith.

In Spider Webs Ltd. bad faith was found where the defendant admitted that it had decided to register a domain name incorporating the plaintiff's mark with the knowledge that, and precisely because, the mark had created valuable goodwill.  286

F.3d at 272.   In <u>Virtual Works, Inc.</u> bad faith was found where the defendant admitted that although it could have selected other domain names for its Web site, it decided to register a domain name similar if not identical to the plaintiff's mark specifically because the valuable goodwill attendant to that mark "left open the possibility of one day selling the site to [the mark owner] for a lot of money."   238 F.3d at 269 (internal quotations omitted).   In <u>PETA</u> bad faith was found because there was evidence indicating that the defendant was familiar with the mark owner's beliefs and purpose for at least 15 years before the defendant registered his domain name (peta.org), which incorporated the plaintiff's mark. 263 F.3d at 363.   In <u>Sporty's Farm</u> the court found bad faith where the evidence showed that prior to registering its domain name, which incorporated the plaintiff's mark, the defendant was fully aware of the valuable goodwill associated with the plaintiff's mark because the defendant had received the plaintiff's catalog prior to their registration of the domain name and was, in fact, planning on competing with plaintiff in the respective market.   202 F.3d at 499; <u>see also</u> <u>Anlin Indus., Inc. v. Burgess</u>, 2007 WL 715687, at *4, *8 (E.D. Cal. March 5, 2007) (holding that defendant's continued use of plaintiff's mark in defendant's Web site after plaintiff had requested defendant to cease and desist such use was evidence of bad faith because defendant knew when he initially registered the domain name that it contained the plaintiff's mark, and the plaintiff's mark had valuable goodwill).

The evidence presented in these ACPA cases stands in stark contrast to the evidence in this case.  HIT has not produced any evidence indicating that when Murphy registered the Helix Health domain names in 2005 he was even aware that HIT's mark had valuable goodwill, or that his selection and registration of the Helix Health domain names was in any way motivated by a desire to exploit that goodwill.  Instead, according to the undisputed evidence, Murphy's only motivation for registering the Helix Health domain names in 2005 (or even re-registering the myhelixhealth.org and myhelixhealth.com domain names in 2008) was to create a Web site for a corresponding and legitimate business.  The undisputed evidence shows that this case simply does not present "the paradigmatic harm the ACPA was enacted to eradicate[.]"  Lucas Nursery & Landscaping, Inc., 359 F.3d at 810.

It may be that Murphy's domain names resemble, even closely resemble, HIT's mark.  But "[t]he fact that a domain resembles a [distinctive] trademark . . . hardly in and of itself establishes bad faith."  Virtual Works, Inc., 238 F.3d at 269.  Had HIT produced some evidence indicating that when Murphy registered the Helix Health domain names he did so knowing that it was similar to a mark that had valuable goodwill, and that Murphy sought to exploit that goodwill to his advantage, this might be a very different case.[41]  Without such evidence, however, or other evidence

---

[41]The court is not persuaded by HIT's argument that the fact that the registrars of the Helix Health domain names, GoDaddy.com (continued...)

indicative of a bad faith motivation to profit from HIT's mark, there is simply not enough evidence to support a judgment for HIT as to this issue.[42]

## IV.   Conclusion and Order

Based on the foregoing analysis, defendant Steven Murphy's Cross-Motion for Summary Judgment (Docket Entry No. 58) is **GRANTED**; Plaintiff Healix Infusion Therapy, Inc.'s Motion for Final Summary Judgment (Docket Entry No. 49) is **DENIED**.

**SIGNED** at Houston, Texas, on this 2nd day of September, 2008.

SIM LAKE
UNITED STATES DISTRICT JUDGE

---

[41](...continued) and Network Solutions, have locked those domain names is evidence of bad faith.   HIT's own evidence shows that this is standard industry practice once a registrant, such as Murphy, has been sued, and occurs regardless of the underlying merits of the suit.   Nor is the court persuaded that Helix Health or Murphy's alleged use of the telephone number 877-My-Helix is evidence of bad faith.   HIT has not submitted any evidence that Murphy knew that this phone number was in use by some other company, or that Murphy decided to use the number to exploit the goodwill that number has created.

[42]The final bad-faith factor -- "the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section" -- is not applicable to this action.   15 U.S.C. § 1125(d)(1)(B)(i)(IX).   HIT has neither argued nor submitted any evidence indicating that its mark is both distinctive and famous under § 1125(c), which requires proof that a mark "is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner."   15 U.S.C. § 1125(c)(2)(A).